UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-61485-CIV-DIMITROULEAS

BANTA PROPERTIES, INC.,

Plaintiff,

v.

ARCH SPECIALTY
INSURANCE COMPANY,

Defendant.
_______________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO EXCLUDE EXPERT TESTIMONY OF EMMA MELLINGER, P.E.**

Defendant Arch Specialty Insurance Company ("Arch") attempts to hold Banta's experts to a standard beyond what is required by the law and which Arch's own experts cannot meet. Plaintiff Banta Properties, Inc. ("Banta") hereby responds in opposition to Arch's Motion to Exclude Expert Testimony of Emma Mellinger, P.E. [D.E. #105], and states as follows:

**BACKGROUND OF EMMA MELLINGER'S EXPERT REPORT**

1. Banta retained Emma Mellinger, a professional engineer, through her company, Category 5 Engineering Services, Inc., as an expert in the area of hurricane damage to the windows at the Colonial Park and Parkcrest apartment complexes. Ms. Mellinger's scope did not include the Westwood apartment complex.

2. Ms. Mellinger has been an engineer since 1989 and licensed as a professional engineer in Florida since 1996.[1] Since 2004, Ms. Mellinger has been president and principal engineer at Category 5 Engineering Services, Inc., which provides engineering services to

[1] *See* Emma T. Mellinger, P.E.'s curriculum vitae ("Mellinger CV"), attached hereto as Exhibit "1."

manufacturers and installers of windows, doors and hurricane shutters, including site-specific wind load calculations for building permits, site-specific installation details for doors, windows and hurricane shutters, on-site inspections of window and door installations to verify compliance with the Florida Building Code, and supervision and inspection of whole-building window and door replacement projects at multi-story condominium buildings.[2]

3. Based on her experience and skill in evaluating windows, Ms. Mellinger performed an analysis of the windows at the Colonial Park and Parkcrest apartment complexes for hurricane-related damage. As part of her analysis, Ms. Mellinger undertook the following activities, among others:

a. Developed a procedure to collect data about the windows and a methodology to determine which windows were damaged[3]

b. Instructed her assistant, Carl Neering, to record specific observations about the windows at the Colonial Park and Parkcrest apartment complexes using her procedures[4]

c. Visited the Colonial Park and Parkcrest apartment complexes on November 28, 2007 with Carl Neering for about four hours to examine the windows[5]

d. Interviewed residents of the Colonial Park and Parkcrest apartment complexes[6]

---

[2] *Id*. at 2.
[3] *See* Emma Mellinger deposition transcript [D.E. #102-1] ("Mellinger Depo.") at 19:21 – 20:14.
[4] *Id*. at 9:19 – 10:3.
[5] *Id*. at 12:18 – 13:24.
[6] *Id*. at 22:8-21.

4. Carl Neering made observations about specific window measurements as instructed by Ms. Mellinger, but did not draw any conclusions expressed in Ms. Mellinger's report.[7]

5. Ms. Mellinger interpreted Carl Neering's measurements and field notes and, using a methodology she had developed, reached a conclusion about which of Banta's windows were damaged by Hurricane Wilma.[8] Ms. Mellinger's methodology involved assessing a sample of 262 windows for the following objective indicators of damage: (1) visible caulking damage, (2) visible gaps, (3) visible corrosion, (4) permanent set, (5) out of square, (6) bent screws, (7) loose screws, (8) excess movement, (9) water leakage, and (10) non-latching or inoperable.[9]

6. Ms. Mellinger designated a window as damaged if it exhibited

a. Any <u>two</u> of the metrics numbered (1), (2) or (3) above <u>and</u> any <u>one</u> of the metrics numbered (6), (7) or (8), or

b. <u>Both</u> of the metrics numbered (4) and (5) above, or

c. The metric numbered (9) above.[10]

7. Ms. Mellinger developed this methodology, requiring only objective measurements in the field, to eliminate the need for the person taking the measurements to exercise judgment.[11]

8. At the time of Ms. Mellinger's and Mr. Neering's visit to Banta's properties, Haag Engineering Co., hired by Banta's primary insurer, General Star Indemnity Company, was

---

[7] *Id.* at 11:2-19.
[8] *Id.* at 19:21 – 20:14.
[9] *See* Category 5 Damage Observation and Assessment Report [D.E. #105-2] ("Category 5 Report") at 3.
[10] *Id.* Metric number (10) was recorded but not used in the final determination of damage.
[11] Mellinger Depo. at 36:13 – 37:2.

also on site for hurricane-damage inspections of the windows, among other things.[12] Engineers from Haag Engineering spoke with Carl Neering and inquired about his criteria for determining whether a window had been damaged by Hurricane Wilma. Haag Engineering never expressed any disagreement with the criteria listed by Mr. Neering, which reflected Ms. Mellinger's methodology described above.[13] Indeed, Haag deemed windows to be storm damaged if they exhibited fractures or pits in the glass, deformations in the aluminum, or sashes out of their tracks, very similar—if not broader and less specific—factors as those considered by Ms. Mellinger.[14]

## **MEMORANDUM OF LAW**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to determine whether the expert testimony is both reliable and relevant. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 152 (1999) (noting that trial judge has considerable leeway in determining expert's reliability). Expert testimony is reliable and relevant, and thus admissible, when: (1) the expert is qualified to testify competently regarding the matters she intends to address; (2) the methodology by which the expert reaches her conclusions is sufficiently reliable; and (3) the testimony will assist the trier of fact. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F. 3d 548, 562 (11th Cir. 1998). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping

[12] *See* Haag Engineering Co. report, December 12, 2007 ("Haag Report"), attached hereto as Exhibit "2."
[13] *Id*. at 4.
[14] *Id*. at 6.

function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000). The court's role as a gatekeeper, however, does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.*

In *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, this Court recognized that "[t]he qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Vision I*, No. 08-81211-CIV-Dimitrouleas, 2009 WL 5103606, at *2 (S.D. Fla. Dec. 28, 2009) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009) (quoting *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 585 (N.D. Fla. 2009)). The expert "need not be a leading authority in the field." *Hendrix*, 255 F.R.D. at 578. If the expert is "at least minimally qualified, gaps in his qualifications" relate more to credibility than to admissibility. *Id.* (citing *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008)).

Ms. Mellinger is qualified. In addition to being licensed as a professional engineer in Florida for 15 years, Ms. Mellinger and her engineering firm, Category 5 Engineering Services, Inc., have routinely provided services such as wind load calculations for building permits, installation details for doors, windows and hurricane shutters, on-site inspections of window and door installations to verify compliance with the Florida Building Code, and supervision and inspection of whole-building window and door replacement projects at multi-story condominium buildings. With this background and expertise, Ms. Mellinger is more than minimally qualified as an expert by her knowledge, skill, experience, training, or education.

Relevant testimony from a qualified expert is admissible if the expert knows of facts which enable her to express a reasonably accurate conclusion as opposed to conjecture or speculation. *Jones v. Otis Elevator Co*., 861 F. 2d 655, 662 (11th Cir. 1988). The law is clear that "[o]nly if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc*., No. C 03-1431 SBA, 2006 WL 1390416, *3 (N.D. Cal. May 18, 2006). Ms. Mellinger far surpasses this "liberal standard of admissibility." *Dorn v. Burlington N. Santa Fe R.R. Co*., 397 F.3d 1183, 1196 (9th Cir. 2005).

Ms. Mellinger used a reliable methodology. Arch complains that Ms. Mellinger did not visit Banta's properties until November, 2007, two years after Hurricane Wilma, and had to rely "entirely upon the observations and conclusions reached by Mr. Neering in forming her opinions." D.E. #105 at 8. Because she had no personal knowledge of the hurricane damage, Arch argues, her findings are nothing more than speculation. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *Cason v. State Farm Fire & Cas. Ins. Co*., No. 09-564 Section I, 2011 U.S. Dist. Lexis 108534 at *8 (E.D. La. September 21, 2011) (quoting *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.,* 80 F.3d 1074, 1077 (5th Cir. 1996).

Moreover, as Banta has argued in its response in opposition [D.E. #89] to Arch's Motion to Strike, or in the Alternative Motion in Limine Regarding Opinion Testimony of Emma Mellinger, P.E. [D.E. #81],[15] Rule 703 of the Federal Rules of Evidence provides that an expert may rely on inadmissible facts or data in rendering an opinion if they are of a type reasonably

[15] This Court has denied Arch's motion without prejudice [D.E. #130].

relied upon by experts in the particular field. Ms. Mellinger has testified that she relied on objective measurements taken by Carl Neering.[16] She has relied on this methodology in the past, and her methodology relies on facts and data that would be reasonably relied upon by other window experts,[17] as demonstrated by Haag Engineering Co.'s own determination of storm damage to windows.[18] Using her training and expertise, Ms. Mellinger interpreted Carl Neering's field measurements and reached her own conclusion about whether a particular window was damaged.[19]

Courts, including this Court, have found this to be completely proper in the *Daubert* context. In *Vision I*, cited above, this Court found that the similar methodology of a windows expert was reliable:

> [T]he Court concludes that the methodology used by Girard in reaching his conclusions is sufficiently reliable. Aspen takes issue with the fact that Girard relied upon the inspections performed by Girard's assistant in forming his opinion and that Girard performed no quantitative reasoning or analysis and was unable to articulate any authority or scientific basis for his conclusions and opinions. However, courts routinely permit experts to rely upon assistants to carry analyses that the expert designed. *McReynolds,* 349 F.Supp.2d at 36; *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.,* 222 F.Supp.2d 423, 492 (S.D.N.Y. 2002) (there is no requirement that an expert must run his own tests); *Dura Automotive Sys. of Ind., Inc. v. CTS Corp.,* 285 F.3d 609, 612 (7th Cir. 2002) ("An expert witness is permitted to use assistants in formulating his expert opinion."). Moreover, based upon Girard's extensive experience with windows and sliding glass doors, the Court concludes that there is a logical basis for Girard's testimony.

---

[16] Mellinger Depo. at 9:20-22; 20:3-14.
[17] *Id*. at 20:3-14; 25:4-7. Anthony Cinnamon, Arch's putative expert, has also testified that it would be appropriate to consider the same factors considered by Ms. Mellinger. *See* Anthony Cinnamon deposition transcript [D.E. #93-4] at 27:20-29:4.
[18] Haag Report at 6.
[19] Mellinger Depo. at 20:3-14.

*Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 08-81211-CIV-Dimitrouleas, 2009 WL 5103606, at *2 (S.D. Fla. Dec. 28, 2009).[20] *See also Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*, No. 6:07-cv-326-Orl-DAB, 2009 U.S. Dist. LEXIS 36254 at *13 (M.D. Fla. Apr. 20, 2009) ("There is no requirement that an expert has to have first hand information as to all relevant facts and verify same; nor is there a requirement that the expert must perform all testing personally. Just as a physician may reliably interpret an X-ray taken by a technician, a Professional Engineer is qualified, by training and experience, to review the work of others and opine to matters *within his expertise*.") (emphasis in original); *United States v. Allen*, 190 Fed. Appx. 785 (11th Cir. 2006) (recognizing that expert may rely on hearsay if it is of the type normally utilized by experts in the field); *Flagstar Bank, FSB v. Hochstadt*, No. 08-80795-CIV-Hurley/Hopkins, 2010 U.S. Dist. LEXIS 137363 (S.D. Fla. Dec. 30, 2010) (same).

Arch also contends that Ms. Mellinger should have confirmed that the damage to Banta's windows was not caused by another event. D.E. #105 at 8. This is not the law, and absolute certainty is not required from the expert. *Jones v. Otis Elevator Co.*, 861 F. 2d 655, 662 (11th Cir. 1988). Any weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility. *Id.* at 663. The party opposing the expert will have the "opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility." *Id.* *See also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold)

[20] This Court should note that Arch has cited this very case in support of its argument that its own putative expert, Anthony Cinnamon, who performed a "visual assessment of the property in relation to possible hurricane damage," used a reliable methodology [D.E. #125 at 15], while simultaneously claiming here that Ms. Mellinger's more comprehensive methodology was unreliable because she used an assistant to gather data.

may go to the testimony's weight, but not its admissibility.") Even in the presence of imperfect data, and even if better data may result in improved accuracy, it is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony. *See id.* at 856. *See also Chisesi Bros. Meat Packing Co., Inc. v. Westchester Surplus Lines Ins. Co.*, No. 09-6523 Section I/3, 2010 U.S. Dist. LEXIS 102222 at *11-12 (E.D. La. Sept. 9, 2010) (finding that elimination of alternative possibilities is one method of arriving at a reliable result, but not the only method, and that the expert's failure to eliminate other possible causes may undercut the strength of his opinion, but does not affect the admissibility of that opinion). "The perceived flaws in [the expert's] testimony are matters properly to be tested in the crucible of adversarial proceedings; they are not the basis for truncating that process." *Id.* at 12 (quoting *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1079 (5th Cir. 1996)); *Voth v. State Farm Fire & Cas. Ins. Co.*, No. 07-4393 Section "K"(2), 2009 U.S. Dist. Lexis 18479, at *14 (E.D. La. February 17, 2009) (finding that neither Rule 702 of the Federal Rules of Evidence nor *Daubert* require specific actions to be taken to validate the investigation done by an expert witness).

Neither do the rules of evidence demand perfection. *See Kristensen v. Spotnitz*, 2011 U.S. Dist. LEXIS 107027, at *22-23 (W.D. Va. Sept. 21, 2011) ("Rule 702 does not require an expert to furnish a perfect analysis, or the best available analysis, provided that the expert's technique is sufficiently reliable and assists the trier of fact."). "Rather, a court need only determine whether the reasoning and methods underlying the expert testimony are reliable, and whether they have been properly applied to the facts." *Gutierrez v. Wells Fargo & Co.*, No. C 07-05923 WHA, 2010 U.S. Dist. LEXIS 29117, at *33 (N.D. Cal. Mar. 26, 2010). "Where experts may reasonably differ as to the proper calculation of damages or harm, '[v]igorous cross-

examination' and 'presentation of contrary evidence' are the 'traditional and appropriate means' of attacking their opinions." *Id*. at *30-31.

**CONCLUSION**

For these reasons, Banta respectfully requests that this Court deny Arch's Motion to Exclude Expert Testimony of Emma Mellinger, P.E.

Dated: December 1, 2011

Respectfully submitted,

s/ Jay Kim, P.A.

Gregory C. Ward, P.A. (Fla. Bar No. 185949)
gward@wardkim.com
Brian L. Lerner, P.A. (Fla. Bar No. 177202)
blerner@wardkim.com
Jay Kim, P.A. (Fla. Bar No. 137863)
jkim@wardkim.com

Ward Kim Vaughan & Lerner LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL 33394
Telephone: (954) 527-1115
Facsimile: (954) 527-1116
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on all counsel or parties of record on the Service List below.

s/ Jay Kim, P.A.

**SERVICE LIST**

Gregory C. Ward
gward@wardkim.com
Brian L. Lerner
blerner@wardkim.com
Jay Kim
jkim@wardkim.com
Ward Kim Vaughan & Lerner LLP
One Financial Plaza
100 SE Third Avenue, Suite 2001
Fort Lauderdale, Florida 33394
Telephone: (954) 527-1115
Facsimile: (954) 527-1116
*Attorneys for Plaintiff*

Via Transmission of Notices of Electronic Filing Generated by CM/ECF

Lauren D. Levy
llevy@butlerpappas.com
Butler Pappas Weihmuller Katz Craig LLP
80 SW 8th Street
Suite 3300
Miami, Florida 33130
Telephone: (305) 416-9998
Facsimile: (305) 416-6848
*Attorneys for Defendant*

Via Transmission of Notices of Electronic Filing Generated by CM/ECF